Brown v. The Mayor, Aldermen and Commonalty of the City of New York.

---

MARTIN B. BROWN *against* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK.

(Decided June 5th, 1876.)

The printing of ballots for voting upon the constitutional amendments, provided by L. 1874, ch. 330, for submission to the people, when directed to be done by a resolution of the board of aldermen of New York City, acting as supervisors of the county of New York, approved by the mayor, is an expense for which the corporation of the city of New York is liable.

The provision in the city charter of 1873, requiring printing to be supplied in the manner therein provided for, does not apply to such a case.

APPEAL by defendant from a judgment of this court, entered on the verdict of a jury, for $2,837, after a trial before Judge VAN BRUNT.

The issue in the case was whether the defendant, the corporation of the city of New York, was liable for the printing of constitutional amendment ballots, printed pursuant to a resolution of the board of aldermen of the city acting as supervisors, and pursuant to a resolution of the commissioners of the city record.

At the trial, Judge Van Brunt held that the defendant was so liable, and submitted to the jury only the question as to what was the reasonable value of the work done by the plaintiff.

*Francis Lynde Stetson*, for appellant.

*John H. Strahan*, for respondent.

CHARLES P. DALY, Chief Justice.—It was within the powers of the board of aldermen, acting as a board of supervisors, to provide for the printing of ballots in the form required by the act providing for the submitting of the amendments to the Constitution to the electors of the State (L. 1874, c. 330, p. 449), that the requisite facilities should be offered to each elector in the county to exercise his rights in voting for the adoption or rejection of any or all of the proposed amendments to the Constitution.

The proposed amendments adopted by the constitutional convention, and affirmed by two successive acts of the legislature, were eleven in number, and by the act above referred to the voting upon them was to be by a single ballot. All the amendments were to be printed or written upon one ballot, and each ballot was to be counted as a vote cast for each proposition or proposed amendment thereon, not canceled with ink or pencil, and against each proposition or proposed amendment that was so canceled.

In so important a matter as the voting by the people upon the proposed change in the fundamental or constitutional law of the State, it was indispensable, especially in this county, where the vote cast at an election is very large, that ballots in the form required by the act should be printed, as each ballot referred to all the proposed amendments by the number and name of the article in the Constitution proposed to be amended, or by the name of the amendment, or by its number, where it constituted a new article. It was certainly not the intention of the act for the submission of the amendments, that each voter should have the obligation imposed upon him of providing a complicated ballot of this description, either by writing it out, or getting it printed to enable him to vote intelligently, whilst it certainly was the intention that there should be a full, intelligent and free exercise of the right of each elector to vote for or against all or any of the proposed amendments, and the obvious way, especially in this county, for a proper exercise of the franchise in this important matter was to have an adequate supply of ballots printed in the peculiar form required by the act, with the necessary facilities in their distribution, that each elector

might procure one, and cancel by ink or pencil the amendment he wished to vote against, or all of them, if he thought proper. By whom were these indispensable facilities—as I regard them —to be afforded? Clearly, in my judgment, by the county authorities, and the only body having the power in this county to make a proper provision for this exigency was the board of aldermen, acting, as they may do, as a board of supervisors for the county.

The act of 1873 declares that "the aldermen shall from the time of the passage of that act 'be the supervisors of the county of New York'" (L. 1873, p. 485, § 4); and the act of 1874, known as the "consolidation act," provides that all the powers and duties which then were, or which might thereafter be conferred upon the board of supervisors of the city and county of New York, should be exercised and performed by the board of aldermen, subject to the power of approval or rejection by the mayor (L. 1874, p. 360, § 3).

The board of aldermen, acting in their capacity as a board of supervisors, by the passage of a resolution, October 1, 1874, directed Mr. Pinckney, who held the office of the clerk of the board of aldermen and supervisors, to cause a sufficient number of ballots to be printed and distributed, in pursuance of the provisions of the act of 1874 before referred to, for the submission of the proposed amendments to the people, which resolution was approved by the mayor, October 15, 1874; and Mr. Pinckney, in pursuance of this resolution, directed the plaintiff to print the necessary number of ballots, which Mr. Pinckney distributed to all parties who required them, by giving to the persons, organization or parties who applied for them a written order upon the plaintiff for the number of ballots required by the parties or organizations applying for them, and it is for the ballots thus printed and distributed, involving a charge or expenditure of $2,600, that the plaintiff recovered the judgment appealed from.

If, as I have assumed, the board of aldermen, acting as a board of supervisors, had, with the approval of the mayor, the authority to order the printing of these ballots, then the expense thereby incurred became a county charge (1 Rev. Stat. 364, § 1, subd. 3; p. 367, § 2, v. d. 2, 3; L. 1874, ch. 304, § 2).

The general act of 1872, in relation to elections in the city and county of New York, provides, by the 91st section, for the payment of the county expenses incurred by elections, and makes such costs and expenses a county charge. This section enumerates specifically the nature of many of the expenditures, such as the compensation of inspectors, poll clerks, &c., necessary election notices, advertisements, maps, books, register's stationery, &c., rent, &c., of places of registration and polling, furnishing, repairing and carting of polling boxes; in which enumeration the printing of ballots is not specified or distinctly provided for. There is, however, a general provision at the close of this enumeration in these words: "And of all supplies of every kind and nature for all elections in said city and county." It is argued that the omission of the printing of ballots in the enumeration shows that the printing of ballots was not meant to be a county charge, and that they cannot be brought under the general designation of supplies of every kind and nature for all elections. Our attention, moreover, is called to the provision of the Revised Statutes (1 Rev. Stat. p. 144, § 5, subd. 5), to show that the printing of ballots for the use of electors forms no part of the obligation or duty of the county ; that the expense of printing them, by express provision of law, may be lawfully defrayed by a candidate ; and that the elector is to provide himself with a ballot, either written or printed, if he means to exercise his right to vote.

I agree that the printing of ballots for the use of electors, in voting for the election of persons to public office, is in no way imposed upon the county authorities; and that, if such an expense is incurred, the county would not be liable upon it as a county charge. But I have already set forth the reasons which rendered the printing of the peculiar ballot required by law for voting for the numerous amendments proposed by the constitutional convention, as constituting an exceptional case, and in which the board of supervisors provided what I regard as necessary and indispensable facilities for obtaining an expression of the popular will in the proposed change of the fundamental law of the State. I think it was an expense which they could rightfully and did lawfully incur in a peculiar exigency, in

which they were but carrying out and giving the necessary effect to the intention of the act for the submission of the proposed constitutional amendment to the vote of the people.

The restriction in the charter of 1873, requiring printing to be supplied under contracts in the manner therein provided for, relates to printing for the city, and has no application, in my judgment, to the question involved in this case.

The judgment of the court below, therefore, should be affirmed.

ROBINSON and JOSEPH F. DALY, JJ., concurred.

Judgment affirmed.